# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 8452 | **DATE** | 11/26/2003 |
| **CASE TITLE** | Sakharam D. Mahurkar, M.D. vs. C.R. Bard, Inc., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's motion to clarify or reconsider (107-1, 2) is denied.

(11) ■ [For further detail see order attached to the original minute order.]

Document Number: 159

Notices mailed by judge's staff. ✓

number of notices: 3

DEC 01 2003 date docketed

date mailed notice 11/26/2003

courtroom deputy's initials: ETV

mailing deputy initials: ETV

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DR. SAKHARAM D. MAHURKAR,<br><br>Plaintiff,<br><br>v.<br><br>C.R. BARD, INC. and BARD ACCESS SYSTEMS, INC., and BARD HEALTHCARE, INC.,<br><br>Defendants. | **DOCKETED**<br>DEC 0 1 2003<br><br>No. 01 C 8452<br><br>Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

Plaintiff Dr. Mahurkar asks this court to clarify or reconsider the conclusions set forth in its May 13, 2003 Memorandum Opinion and Order, *Mahurkar v. C.R. Bard, Inc.*, No. 01 C 8452, 2003 WL 21078033 (N.D. Ill. May 13, 2003) (hereinafter "Claim Construction Opinion") construing a number of disputed claims of Dr. Mahurkar's U. S. Patent No. 4,808,155 (the '155 patent) and U. S. Patent No. 4,895,561 (the '561 patent). The court has reviewed the Claims Construction Opinion and the parties' submissions. For the reasons explained here, the court adheres to its earlier determinations. Plaintiff's motion is denied.

## BACKGROUND

In August 2002, Plaintiff filed his Second Amended Complaint charging Defendants C.R. Bard, Inc., Bard Access Systems, Inc., and Bard Healthcare, Inc. (hereinafter "Defendants") with infringing the '155 and the '561 patents. In December 2002, the court conducted a *Markman* hearing at which the parties presented their respective interpretations of a number of claims in each patent. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996). Plaintiff's motion for reconsideration of the court's claim construction is supported by his own declaration, purportedly offered to "correct various misunderstandings created by defendants' extrinsic evidence." (Plaintiff's Motion at 3, n.1.) Defendants filed a

159

memorandum in response to the motion and have deposed Dr. Mahurkar. They propose to submit a transcript of his deposition, but only if the court elects to consider Dr. Mahurkar's declaration.

The procedural history of this case leading to the *Markman* hearing, the background of the '155 and '561 patents, and the prior litigation between the parties are described in the court's Claim Construction Opinion and will not be repeated here. Nevertheless, a brief synopsis of the technology at the heart of this dispute is appropriate.

The role of kidneys in the body is to remove toxins from the blood. When kidneys fail to function properly due to disease or injury, blood must be cleansed externally in a process called hemodialysis. *Mahurkar v. Arrow Int'l, Inc.*, 160 F. Supp.2d 927, 930 (N.D. Ill. 2001). The patents-in-suit and the products accused of infringement concern double lumen catheters for use in hemodialysis. In hemodialysis, blood is removed from a patient, diverted to a blood treatment unit where it is cleansed, and then returned to the patient. (Plaintiff's Brief for Claim Construction (hereinafter "Pl.'s Brief"), at 1.) Hemodialysis catheters are devices that are inserted into a patient's vein for removal and return of blood. *Arrow Int'l*, 160 F. Supp.2d at 930. A "double lumen" hemodialysis catheter has two separate lumens, or channels, one for removing uncleansed blood and one for returning cleansed blood. *Mahurkar*, 2003 WL 21078033, *2.

## DISCUSSION

### A. Standard of Review

Motions for reconsideration generally serve a very narrow function and must be supported by a showing of extraordinary circumstances justifying relief from judgment. *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir.1996); *see also Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 404 (7th Cir.1986). The rulings of a district court are not to be viewed "as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill.1988). Rather, such motions

are designed to correct manifest errors of law or fact or to present newly discovered evidence. *Publishers Resource, Inc. v. Walker-Davis Publications, Inc.*, 762 F.2d 557, 561 (7th Cir.1985). Accordingly, a motion for reconsideration is an "improper vehicle to introduce evidence previously available or to tender new legal theories." *Bally*, 804 F.2d at 404; *Bachman v. Bear, Stearns & Co., Inc.*, 57 F.Supp.2d 556, 564 (N.D. Ill.1999) ( "[A] party may not use a motion for reconsideration to introduce new theories or rehash old arguments.").

Plaintiff does not contend that his Declaration presents any newly discovered evidence. Rather, the Plaintiff argues that the Mahurkar Declaration is submitted "to correct various misunderstandings created by defendants' extrinsic evidence." (Plaintiff's Motion at 3, n.1.) This court has ruled that it would not consider expert testimony in claim construction, and has not considered any expert testimony when it construed the disputed claims of the `561 and the `155 patents.[1] Furthermore, the Court of Appeals for the Federal Circuit has clearly stated that

> [t]he testimony of an inventor and his attorney concerning claim construction is thus entitled to little or no consideration. The testimony of an inventor often is a self-serving, after-the-fact attempt to state what should have been part of his or her patent application . . . .

*Bell & Howell Document Management Prods. Co. v. Altek Systems*, 132 F.3d 701, 706 (Fed. Cir. 1997). For these reasons, this court declines to consider the Mahurkar Declaration or the arguments supported solely by the Declaration. Instead, the court will review the claim construction disputed by the Plaintiff only for any manifest errors of law or fact.

**B.    The Construction of the Term "Catheter" in Claim 34 of the `561 Patent**

Plaintiff contends, first, that the court's construction of the term "catheter" is a manifest error

---

[1] Plaintiff's suspicion that the court did consider extrinsic evidence may be a function of the fact that the court relied on portions of Defendants' claims construction brief that itself presented the observations of its experts. The court did not in fact review the experts' opinions and did not understand those sections of Defendants' briefs as dependent upon expert interpretations; to the contrary, the arguments made by Defendants rested, in the court's view, on the claims language itself. Nor has Plaintiff satisfied the court that its conclusions are not supported in the plain language of the patent, without reference to any expert submissions.

3

of law because the court's construction attributed the ordinary and customary meaning to the term while, as the Plaintiff argues, the patent clearly shows that Plaintiff intended a different meaning. Citing the principle that a patentee is entitled to be his own lexicographer, Plaintiff argues that the term "catheter" as used in the '561 patent means "only that portion of the catheter assembly intended to be inserted into the patient's vein."

The court construed the term catheter to mean "a tubular device for withdrawing fluids from, or introducing fluids into, a cavity of the body, such as a blood vessel." 2003 WL 21078033, *8. The court noted that "the proximal end of the catheter tube is straight and is attached either to the Y-shaped connector or the unitary connecting member, which can be curved." *Id.* *10. Thus, the Y-shaped connector and the unitary connecting member "must be something physically separate from the catheter," and the "proximal end of the catheter is therefore the location where the two pieces of the catheter assembly meet." *Id.* The court concluded that "the catheter itself must be visibly attached to a distinct portion, the connecting means, and the catheter tube must be straight, not curved." *Id.* Plaintiff believes that the above construction "results in the catheter being defined as the entire assembly directly contrary to the clear disclosures in the '561 patent." (Plaintiff's Motion at 2.) In other words, the Plaintiff argues that the court failed to attribute to the term "catheter" the meaning the Plaintiff intended as his own lexicographer.

Absent express statements to the contrary, the words of a patent have their ordinary and customary meanings: "In the absence of an express intent to impart a novel meaning to the claim terms, the words are presumed to take on the ordinary and customary meanings attributed to them by those of ordinary skill in the art." *Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*, 326 F.3d 1215, 1220 (Fed. Cir. 2003). The ordinary and customary meaning of a claim term may be determined by reviewing the claims themselves, dictionaries and treatises, and the written description, the drawings, and the prosecution history. *Id.* (citations omitted). Patent law does allow a patentee to be his own lexicographer, *ZMI Corp. v. Cardiac Resuscitator Corp.*, 844 F.2d 1576, 1580 (Fed. Cir.

4

1988), but the presumption of ordinary and customary meaning is rebutted only "where the patentee . . . has *clearly* set forth a definition of the term different from its ordinary and customary meaning." *Id.* (emphasis added). *See also Apple Computer, Inc. v. Articulate Systems, Inc.*, 234 F.3d 14, 21, n.5 (Fed. Cir. 2000) ("[A] patentee must deliberately and clearly point out how these terms differ from the conventional understanding.").

The specification of the `561 patent does not clearly define the term "catheter" differently than its ordinary and customary meaning. Instead, the specification makes frequent reference to the recognized functions of catheters, without signaling any unusual meaning of that word. For example, the specification of the `561 patent, in col. 1, lines 8-11 (in the "Field of Invention" section) states that the present invention particularly relates to "an improved method and apparatus for connecting a dual-lumen catheter to the long flexible tubes which carry blood in both directions between the catheter and an extracorporeal blood treatment unit." The patent continues by making reference to other catheters in current use: "Dual-lumen catheters have come into widespread use for extracorporeal blood purification procedures such as hemodialysis." (`561 patent at col. 1, lines 21-23, the "Background of the Invention" section). "Examples of such catheters are shown in U.S. Pat. Nos. 4,134,402; 4,583,968; and 4,682,978." *Id.* at col.1, lines 28-29. Further, the "Detailed Description of Preferred Embodiments" section of the `561 patent, in col. 4, lines 35-39, explicitly states that "referring first to FIG. 1, there is shown a dual-lumen hemodialysis catheter of the type described in Mahurkar U.S. Pat. No. 4,583,968."[2] Thus, the `561 patent unambiguously relates to an improved method and apparatus for connecting a dual-lumen catheter to a blood treatment unit,

---

[2] As Defendants point out, Mahurkar's own U.S. Pat. No. 4,583,968 patent provides a definition of the term "catheter" that is entirely consistent with the construction adopted by this court. (Defendants' Response at 6, n.8.) The '968 patent recites a dictionary definition from a dictionary published in 1974. The court is mindful of the fact that the dictionary is not contemporaneous with the filing, in 1988, of the application from which the `561 patent issued, but the fact that the Plaintiff expressly referenced the '968 patent with respect to the definition of "catheter" strengthens the conclusion that the court properly construed the term.

5

where the dual-lumen catheter is one that has come to "widespread use" and is of the type described in at least three other patents.

Plaintiff argues that a different definition of catheter is set forth in col. 1, line 54 to col. 2, line 6 of the '561 patent, which states as follows:

> The hub and portions of the extension tubes affixed to the catheter are normally used to secure the catheter to the patient, by the use of sutures and by applying tape or an adhesive-coated bandage across the hub and/or the extension tubes and adhering the tape or bandage to the skin of the patient on opposite sides of the hub. Sometimes the hub forms either a suture groove or a suture web or "wing" to facilitate attachment to the patient by suturing. Because of the length of the extension tubes and the other auxiliary components, the extracorporeal part of the catheter assembly usually extends beyond the patient's body. As a result, the catheter is continually disturbed by movements of the patient and/or people and equipment around the patient, or by clothing which is periodically donned or removed by the patient. It is not unusual for such movements to cause the catheter to become dislodged entirely from the patient. Even when the catheter is not dislodged, continual movement of the catheter within the vein causes discomfort and pain to the patient, and can lead to damage to the vein in which the catheter is inserted.

Plaintiff contends that this paragraph defines the catheter as "that part of the assembly that is not 'extracorporeal'", and limits the catheter to "that part that is inserted into the vein." (Plaintiff's Motion at 4.) With respect, this court finds in the quoted paragraph nothing that defines the term "catheter," let alone defines it with the clarity required from a patentee acting as his or her own lexicographer. The paragraph makes clear that "the extracorporeal part of the catheter assembly usually extends beyond the patient's body," but does not specify which parts of the assembly are extracorporeal and which parts are not. Plaintiff argues that "a person of ordinary skill in the art when seeing an assembly described in this patent would readily appreciate what portion of the assembly could be and should be inserted into the body, and that portion is what this patent calls the 'catheter'." (Plaintiff's Motion at 5.) This court is far less certain that such an understanding would be "readily" apparent. A patentee acting as his or her own lexicographer must clearly set forth, in the patent, the definition of the term that is different from its ordinary and customary meaning, Brookhill-Wilk 1, 326 F.3d at 1220, and cannot rely on what a person of ordinary skill in

6

the art can deduce from examining a device that is manufactured according to the specification of the patent. The court concludes that the presumption of ordinary and customary meaning of the term "catheter" in the `561 patent is not rebutted, and, accordingly, the term must be given its ordinary and customary meaning.

Plaintiff warns that the court's construction of "catheter" does not "inform the fact finder of that portion of the assembly which is the 'catheter' in the context of this patent" and "essentially would leave the jury to decide what portion of the catheter assembly is the 'catheter' which would be clear error." (Plaintiff's Motion at 8.) Plaintiff cites *Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306,1313 (Fed. Cir. 2003) for the proposition that the court commits reversible error when it allows the jury to add an additional limitation to the district court's claim construction. (Plaintiff's Motion at 8.) *Moba* was an action for infringement of a patent on an egg processing machine. At trial, the district court instructed the jury on the "guiding steps" for egg processing set out in the patent, but failed to explain that the steps could be performed simultaneously. *Moba*, 325 F.3d at 1313. The Court of Appeals for the Federal Circuit found that, in essence, the jury instruction allowed the jury to add an additional limitation to the district court's claim construction of the term "guiding steps," *i.e.*, that the steps be performed sequentially. *Id.* This constituted clear error, as claim construction is a question of law and is not the province of the jury. *Id.* This court acknowledges that principle. The fact that the court has adopted a construction of the term "catheter" that is at odds with the one Plaintiff prefers does not establish that the court will permit the jury to adopt its own construction.

Finally, the court notes that although Plaintiff has not specifically addressed the matter, it appears that he understands the "proximal end" of the catheter as that point where the catheter exits the patient's body (or the patient's vein). In this court's view, the endpoint of the catheter (i.e., the proximal end of the catheter) is the location where the two pieces of the catheter assembly meet. The court notes that Claim 34 of the `561 patent does not just recite a "catheter," but a "dual-

7

lumen catheter." A dual-lumen catheter "has two separate lumens, or channels, one for removing uncleansed blood and one for returning cleansed blood." The `561 patent explicitly defines what is meant by "lumens." Col. 1, lines 39-45 recite: "[d]ual-lumen hemodialysis catheters are normally supplied with certain auxiliary components permanently pre-attached to the catheter. These auxiliary components facilitate the connection of the two lumens of the catheter (which are extremely small within the catheter) to a pair of long flexible tubes which carry blood to and from the hemodialysis unit." In other words, the lumens end at the point where they are connected to the auxiliary components. Thus, the proximal end of the dual-lumen catheter, and the endpoint of the catheter itself, is the point where the two lumens end.

Further support for this conclusion is found in col. 5, lines 9-13, with respect to FIG. 1, where "[a]t the proximal end of the catheter 10, the two D-shaped lumens 13 and 14 open into a Y-shaped connector or hub which forms two internal passageways 31 and 32 (see FIGS. 7-9) communicating with the proximal ends of the catheter lumens." This language identifies the proximal end of the catheter as the point where the lumens "communicate" with the internal passageways. The same holds when the connecting means is a unitary connecting member. In col. 8, lines 19-23, the `561 patent states: "[m]ore specifically, the unitary connecting member may form two internal U-shaped passageways, each of which is in communication with one of the lumens of the catheter." Again, the proximal end of the catheter is where the lumens "communicate" with the internal U-shaped passageways.

The court's interpretation defines the proximal end of "catheter" with respect to an *internal* frame of reference—the lumens. In contrast, the construction proposed by the Plaintiff, by implication, defines the proximal end of the "catheter" with respect to an *external* frame of reference—the patient's body or vein. As this court noted earlier, such a construction is too fluid to be meaningful. The function of a claim in a patent application is "putting competitors on notice of the scope of the claimed invention." *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 951 (Fed.

Cir. 1993). Plaintiff's proposed definition of "catheter" (and by implication, the definition of the "proximal end" of the catheter) is not consistent with the notice function of a patent claim since it defines the "proximal end" of the catheter with respect to a frame of reference unrelated to the catheter or the catheter assembly of which it is a part.

C.   The Construction of the Term "Connecting Means" in Claim 34 of the '561 Patent

Plaintiff contends that the court's construction of the term "connecting means" in Claim 34 of the '561 patent is a manifest error of law because it is not supported by the intrinsic evidence. The court construed the term "connecting means" as (1) a Y-shaped connector connected to extension tubes that curve back toward the distal end of the catheter, and equivalents thereof; and (2) a unitary connecting member forming two internal U-shaped passageways, each of which is in communication with one of the lumens of the catheter, and equivalents thereof. 2003 WL 21078033, *9. Further, the proximal end of the catheter tube is straight and is attached either to the Y-shaped connector or to the unitary connecting member, which can be curved. Id. The Plaintiff argues that the above construction of "connecting means" contradicts the specification when the "connecting means" is a unitary connecting member.

As explained in the earlier opinion, the "connecting means" in Claim 34 of the '561 patent is in a means-plus-function format. Id. at *9. Pursuant to 35 U.S.C §112, ¶ 6, a claim element "may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof." The claim elements written in this format are construed to cover the corresponding structures described in the specification, and equivalents thereof. Id. The court must identify the corresponding structures disclosed in the specification that are linked or associated with the function. *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.*, 145 F.3d 1303, 1308 (Fed. Cir. 1998).

Plaintiff argues that the court's construction of unitary connecting member is not supported

9

by the specification, and constitutes a manifest error of law. According to Plaintiff, the term "unitary" modifies both the catheter and the connecting member; that is, Plaintiff asserts, the catheter and the connecting member form an integral unitary structure. The court believes that patent language is inconsistent with this assertion. The specification of the '561 patent, in col. 8, lines 16-27, describes that the curved passageways provided by the bent extension tubes of the Y-shaped connector

> *may instead be formed* by a *unitary connecting member* fastened to the proximal end of the dual-lumen catheter. More specifically, the unitary connecting *member may form two internal U-shaped passageways*, each of which is in communication with one of the lumens of the catheter. The *other ends of the passageways* may terminate in a pair of integral ferrules for direct connection to a pair of tubes leading to the dialysis unit, or *the passageways* may lead into a pair of straight extension tubes carrying the conventional clamps and luer fittings.

(emphasis added). Nothing in this description suggests that the connecting member and the catheter form a "unitary" structure. The adjective "unitary" modifies "connecting member," and describes how the internal passageways are positioned within it. In contrast to the Y-shaped connector in which the extension tubes providing the passageways are clearly spread apart; this description makes clear that in the unitary connecting member, passageways are not separated but instead are kept closely together. Again, the court is satisfied that its construction of the term "connecting means" is supported by the specification and is not a manifest error of law.

Plaintiff suggests that the court's interpretation violates the doctrine of claim differentiation. Plaintiff notes that Claim 35 expressly calls for the connecting means to have a "connector", and that the ordinary meaning of "connector" is something physically separate from the catheter and the connecting means. Accordingly, Plaintiff insists, under the doctrine of claim differentiation, the connecting means in Claim 34 must not be physically separate from the catheter. As Defendants point out, however, the doctrine of claim differentiation does not apply to differentiate a claim in means-plus-function format from a dependent claim that recites structural limitations. (Defendant's Response at 9.) In *Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1538 (Fed. Cir. 1991), the Court

10

of Appeals for the Federal Circuit explained that the judicially developed doctrine of "claim differentiation" does not override the specific provisions of 35 U.S.C. §112, ¶ 6. A means-plus-function limitation cannot be broadened by the presence of another claim specifically claiming the disclosed structure which underlies the means clause or the equivalent of that structure. *Laitram*, 939 F.2d at 1538. Thus, the presence of the term "connector" in Claim 35 does not require the conclusion that the connecting means recited in Claim 34 form an integral structure with the catheter.

**D.    The Construction of "Non-Tapered Distal End Portion" in Claim 1 of the '155 Patent**

Plaintiff urges the court to reconsider its construction of the claim term "non-conical and non-tapered distal end portion" in Claim 1 of the '155 patent. The court construed the term to mean that "the distal end [portion] of the catheter does not taper anywhere along its length," 2003 WL 21078033, *5-6, and that "the distal end portion does not have a conical shape anywhere along its length." *Id.* at *5, n.7. Plaintiff now contends that the court made an error of law by narrowly construing the term "non-tapered," thus limiting the term to what appears to be the preferred embodiment of the patent, contrary to the express statement in col. 3, lines 5-11 of the '155 patent that the invention is not limited to the preferred embodiment. (Plaintiff's Motion at 11.)

The court acknowledges that the patent is not limited to the preferred embodiment, but is not persuaded that its interpretation was in error. Plaintiff introduced the limitation "non-conical and non-tapered" during patent prosecution to distinguish his invention from a prior art catheter with a smooth tapered distal end. 2003 WL 21078033, *6. Nothing in the claims, the specification, or the prosecution history of the '155 patent suggests that the distal end portion of the catheter may be non-conical and non-tapered at some points along its length and conical or tapered at other points. But even if one is to presume that the broad construction proposed by the Plaintiff is supported by the prosecution history (in particular, by presuming that the Plaintiff intended to surrender just

11

enough scope to avoid the prior art but not more), the court's construction is correct under a controlling legal precedent. The Court of Appeals for the Federal Circuit has held in *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1581 (Fed. Cir. 1996) that when a claim is subject to two possible constructions, the narrower construction should be adopted. In *Athletic Alternatives*, the specification offered no guidance as to the scope of the term being construed, and the prosecution history supported both a broad and a narrow construction. *Id.* at 1580. The *Athletic Alternatives* court held that both proposed constructions were equally plausible and because under 35 U.S.C. §112, ¶ 2 the patentee was required to "particularly point out" and "distinctly claim" the patented invention, the narrower construction should be adopted. *Athletic Alternatives*, 73 F.3d at 1581. Here, the court's construction is narrower and, hence, more appropriate.

Finally, Plaintiff contends that the court's construction of the term "non-conical and non-tapered distal end portion" is a manifest error of law because the court relied on a legally deficient construction of the term "distal end portion having a cross-sectional area." The court construed "having a cross-sectional area" to mean that the distal end portion has "only one cross-sectional area." 2003 WL 21078033, *5. The Plaintiff relies on *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1347 (Fed. Cir. 2001) for the proposition that "a" or "an," when used in a patent claim, means "one or more" in claims with open-ended transitional phrases. Plaintiff thus argues that the distal end portion may have one or more different cross-sectional areas since the phrase "having" is an open-ended transitional phrase.

As Defendants point out, Plaintiff has omitted crucial language from the *Crystal Semiconductor* opinion. (Defendants' Response at 12.) The *Crystal Semiconductor* court held that while "having" *can* make a claim open, that word "does not create a presumption that the body of the claim is open." *Id.* at 1348. The court must examine the claim in its full context to determine

whether the use of "having" limits the claim to its recited elements. *Id.* Here, the article "a" is consistently used as a singular modifier in Claims 1 and 7 when preceded by the "having" transitional phrase. (Defendants' Response at 13.) The court concludes that its construction of the terms "a cross-sectional area" and "non-conical and non-tapered distal end portion" do not reflect a manifest error of law.

E.     The Construction of "Substantially Uniform" in Claim 7 of the '155 Patent

The term "substantially uniform" in Claim 7 of the '155 patent was not before the court as a disputed term and was not addressed by the parties in their respective *Markman* briefs. Relying on the doctrine of claim differentiation, the Plaintiff argued for the first time at the *Markman* hearing that, because the words "substantially uniform" were used in Claim 7 of the '155 patent to describe the cross-section of the tube containing the distal end portion, by implication "non-tapered" in Claim 1 must mean something other from "uniform." Plaintiff now contends that the court has not construed the term "substantially uniform" and urges the court to clarify its construction of the claim element "a distal end portion of substantially uniform cross-section" in Claim 7. (Plaintiff's Motion at 14.) In other words, the Plaintiff argues that the court has made a manifest error of law or fact by failing to define the term "substantially uniform."

The court has stated that "substantially uniform" modifies the internal cross section of the tube, while "non-tapered" describes the outside appearance or shape of the distal end. 2003 WL 21078033, *6. The court has further stated that these terms "complement each other: if the distal end did taper, then the cross section of the tube would probably not be substantially uniform." *Id.* The court construed the term "non-tapered distal end portion" to mean that "the distal end does not taper anywhere along its length." *Id.*

The gist of the Plaintiff's argument seems to be that court erred when it indicated that a distal end portion with "substantially uniform" cross-section was essentially the same as a distal end

13

portion that does not taper "anywhere along its length." Plaintiff relies on the doctrine of claim differentiation to support this argument. The doctrine of claim differentiation cannot, however, broaden claims beyond their correct scope as determined in light of the specification and the prosecution history and any relevant extrinsic evidence. *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998). Thus, claims which are written in different words may ultimately cover substantially the same subject matter. *Id.* For this reason, the court's conclusion that a "substantially uniform" cross section essentially indicates a distal end that does not taper "anywhere along its length" is not a manifest error of law.

Plaintiff's argument appears to rest entirely on the meaning of the word "substantially." Had Claim 7 recited just "uniform" instead of "substantially uniform," Plaintiff could not reasonably contend the court misinterpreted it. The word "substantially" is inherently ambiguous when recited in a patent claim because it inherently fails to "particularly point out" and "distinctly claim" the invention as required by 35 U.S.C. §112, ¶ 2. Courts have struggled to construe the term "substantially" as recited in a patent claim when the specification does not provide a clear definition of the term. At least one court, however, has provided a rationale and a construction of the term "substantially" that are consistent with this court's reasoning and construction of the term "substantially uniform." In *Amhil Enterprises Ltd. v. Wawa, Inc.*, 81 F.3d 1554, 1562 (Fed. Cir. 1996), the Court of Appeals for the Federal Circuit construed "substantially vertical faces" on a container lid to mean "faces that deviate only slightly, if at all, from the vertical."[3] Thus, the Plaintiff's argument does not support a conclusion that the court's construction of the term "substantially uniform" in Claim 7 is a manifest error of fact.

---

[3] *See also Ex parte Wheeler*, 163 U.S.P.Q. 569, 570 (Patent Office Board of Appeals, 1969) (determining that "substantially parallel" to a fixed direction is to all intents and purposes, disposed as closely parallel to such direction as is humanly possible).

## **CONCLUSION**

For the forgoing reasons, Plaintiff's motion to clarify or reconsider (Doc. 107-1,2) is denied.

ENTER:

Dated: November 26, 2003

*[signature]*
REBECCA R. PALLMEYER
United States District Judge